**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

AMY MCKINNEY, wife of and                              *
HARLEY KYLE MCKINNEY, on behalf             *          Civil Action No.: 2:12-01242
of themselves and all those similarly situated,     *
                                     Plaintiffs    *
                                                *          Judge:  ENGELHARDT
versus                                                          *
                                                *
COVIDIEN, INC.                                               *          Magistrate Judge: KNOWLES, III
                                                *
                          Defendant          *
*******************************************

**AMENDED CLASS ACTION COMPLAINT**

      Pursuant to the Order of this Honorable Court affording Plaintiffs twenty (20) days within

which to amend their original Class Action Complaint, COME NOW, Plaintiffs, Amy

McKinney, wife of and Harley Kyle McKinney (hereinafter "Kyle McKinney"), by and through

their undersigned counsel, who bring this Amending Class Action Complaint against Defendant,

Covidien Inc., individually and on behalf of those similarly situated and allege as follows:

      1.      This is an action for damages relating to Defendant's development, testing,

assembling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying,

and/or selling the defective product(s) sold under the brand or model name Covidien "Endo GIA

Universal Stapler" or one of Covidien's "Roticulator" surgical stapling systems and/or "color

designated staple loads" or a substantially similar surgical stapling system(s) and/or product(s) of

1

Defendant Covidien.  (hereinafter "Covidien Surgical Stapling Device(s)", "Covidien Surgical Stapling System(s)" or "Defective Device(s)"). Plaintiffs assert that, upon information and belief after due inquiry, discovery will reveal the exact product(s) of defendant Covidien that were utilized in Plaintiff Amy McKinney's initial gastric surgery and that such were one (1) of the above listed models and/or brands and that such products were defective as per the applicable provisions of the Louisiana Products Liability Act, pursuant to which this action is brought.

## PARTIES, JURISDICTION AND VENUE

2.    Plaintiffs, Amy McKinney wife of and Harley Kyle McKinney, are person of the full age of majority and residents of Washington Parish, State of Louisiana.

3.    Defendant, COVIDIEN, INC. (hereinafter Covidien) is a foreign corporation doing business in the State of Louisiana; with principal offices located in Massachusetts.

4.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000 exclusive of interests and costs, and this is an action by individual plaintiffs against a Defendant with its domicile and/or principal place of business in another state.

5 .    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## I

## PLAINTIFFS' FACTUAL ALLEGATIONS

1.     Defendant Covidien placed its Defective Device(s) into the stream of interstate commerce, to wit, its surgical staples and surgical stapling system(s) that was/were utilized by

Plaintiff Amy McKinney's treating physician /surgeon in performing her gastric sleeve resection surgery on May 16, 2011.

2.    Mrs. McKinney experienced problems following the date of her surgery and within 2 weeks of her surgery, she was confirmed by CT scan to have leaks in the surgical staple line that was closed with Defendant Covidien's staples and/or via the use of its stapling system(s), to wit:

3.    On May 28, 2011, Mrs. McKinney in fact presented to Riverside Medical Center Emergency Room with complaints of post surgical adverse symptomology consisting of fever, infection and severe abdominal pain; labs were drawn, x-rays were taken and she was discharged, but only to be rushed to the hospital the following day.

4.    On May 29, 2011 ,Mrs. McKinney was rushed to St. Tammany Parish Hospital with complaints of severe post surgical adverse symptomology consisting of epigastric pain with associated fever and chills. An upper GI demonstrated a leak from the Covidien staple line and such was confirmed via CT scan.  Mrs. McKinney was immediately taken to the operating room for emergency diagnostic laparoscopy and extensive lysis of adhesions and her treating surgeon, Dr. Ordoyne, attempted to reinforce the Covidien staple line by running 0 silk suture along the previous leaking Covidien staple line.  JP drains were inserted. Unfortunately, attempted reinforcement of the Covidien staples/staple line via silk proved woefully unsuccessful.

5.     Mrs. McKinney continued to experience adverse symptomology and on June 8, 10, 14, 23, and 28 reported her continued adverse symptomology to Dr. Ordoyne, her treating physician/surgeon.

6.    On July 20, 2011, Mrs. McKinney was again rushed to Riverside Medical Center

with complaints of severe abdominal pain, change in drainage in her JP drain, infection, fever and fatigue. A CT scan of her abdomen was performed which showed free air and adjacent fat stranding at two small sites adjacent to the greater curvature of her stomach which was reported as worrisome for perforation/leaking along the Covidien staple line.

7.       Mrs. McKinney continued to experience severe adverse symptomology as a result of leakage from Covidien's staple line in August, September, October, November and December of 2011, and on January 30, 2012, Mrs. McKinney again had to be rushed to the Emergency Room at Riverside Medical Center with complaints of abdominal pain, stabbing and cramping located in her left lower quadrant. She also had nausea and loss of appetite, constipation and diarrhea. A CT scan of the abdomen was performed and the CT showed focal lesion present, free fluid present, free air present, perforation of the stomach with multiple abscesses noted and fistual formation. Oral contrast was noted in the peritoneal cavity. She was transferred to St. Tammany Parish Hospital for surgical evaluation and further medical treatment.

8.       Upon admittance to St. Tammany Parish Hospital, an Upper GI was performed on January 31, 2012 which showed linear areas of extraluminal contrast/leak seen extending from the left of the proximal stomach near the GE junction. Among other complications from her Covidien staple line, Mrs. McKinney was diagnosed with inflammation in her colon and C. Difficile Titers were positive for clostridial infection of the colon.

9.       On February 29, 2012, Mrs. McKinney had a CT of her abdomen performed which showed left-sided pleural effusion with associated atelectasis and fluid collection posterior to her spleen.

10.       Since February/March, 2012, Mrs. McKinney has continued to experience severe

4

adverse symptomolgy and complications as a direct result of the leaking Covidien surgical staple line.

As a direct and proximate result of the use of Defendant Covidien's defective product(s) by her treating surgeon in her gastric surgery, and the resulting failure of the surgical stapling system(s) and staples to properly close her surgical incision, Amy McKinney has suffered and continues to suffer both injuries and damages, including but not limited to: past, present and future physical and mental pain and suffering; and past, present and future medical, hospital, rehabilitative and pharmaceutical expenses, and other related damages.

As a direct and proximate result of Defendant placing its Defective Product(s) into the stream of interstate commerce, Plaintiff Amy McKinney suffered legally cognizable harm and required additional medical procedures and surgery.

## I(A)

## THE COVIDIEN HISTORY

1.      At all times material hereto, Defendant Covidien (hereafter referred to collectively as "Defendant") developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, and/or sold the defective product(s) at issue herein under the name "Endo GIA Universal Stapler" and/or "Roticulator" and/or staple loads that Defendant refers to by color designations as "green loads" and "blue loads"  (hereinafter "Covidien Surgical Stapling Device(s), Covidien Stapling System(s)" or "Defective Device(s)"), either directly or indirectly, to members of the general public throughout the United States, including to Plaintiff, Amy McKinney, here in the State of Louisiana.

2.      Defects in Covidien's surgical staples and/or surgical stapling system(s) and/or

defective products are not "new news" to Defendant Covidien. In fact, a multitude of cases have previously been filed against Covidien alleging defects in its surgical stapling products. Further, Covidien has already recalled its Duet TRS units and the U.S. Food and Drug Administration has reported that the company had received numerous complaints related to the use of the product since May 2009. Covidien, however, did not initiate a corrective and preventative action until later in January of 2012 i.e., it was not until January of 2012 when an FDA inspection team sought to review data related to the complaints that Covidien elected to recall its defective Duet TRS product.

3.       Further, Covidien recalled its Roticulator single-use staplers distributed worldwide over concerns about a packaging issue that may lead to contamination. Covidien in fact confirmed on May 18, 2012 a global recall of its Roticulator single-use staplers, launched over packaging issues that may have compromised the sterility of the devices. Initially noted in a release issued by the company's Hong Kong division, Covidien warned that use of the products may increase a patient's risk of infection and asked that health providers identify and quarantine all affected inventory for return to the company.

4.       While discovery has not yet positively identified the exact "model" Covidien staples and/or stapling system or device(s) utilized by Plaintiff Amy McKinney's surgeon, Dr. Ordoyne, in his original gastric surgery performed on Mrs. McKinney in May, 2011, Mrs. McKinney's St. Tammany Parish Hospital medical records reveal that a Covidien surgical stapling system and Covidien's loads of its "green" and "blue" staples was/were in fact utilized by Dr. Ordoyne and that it was either a Covidien "Endo GIA Universal Stapler" or one of Covidien's "Roticulator" or other substantially similar product(s) that was/were utilized in

6

Plaintiff Amy McKinney's initial gastric surgery.

5.    Mrs. McKinney has certainly suffered the exact type of adverse symptomology and harm reported by multiple patients with Covidien surgical stapling systems that have been recalled as unfit for their intended use at the time they left the care, custody and control of Defendant Covidien.

## II

### THE FEDERAL REQUIREMENTS

1.    Federal regulations state that "[r]ecall means a firm's removal or correction of a marketed product that the Food and Drug Administration considers to be in violation of the laws it administers and against which the agency would initiate legal action, e.g. seizure."  See 21 CFR §7.3(g).

2.    Federal regulations state: "[r]ecall classification means the numerical designation, i.e., I, II or III, assigned by the Food and Drug Administration to a particular product recall to indicate the relative degree of health hazard presented by the product being recalled." See 21 CFR § 7.3 (m).

3.    Federal regulations state: "[c]lass II is a situation in which use of, or exposure to, a violative product may cause temporary or medically reversible adverse health consequences or where the probability of serious adverse health consequences is remote." See 21 CFR § 7.3 (m).

4.    Pursuant to federal law, a device is deemed to be adulterated if, among other things, it fails to meet established performance standards, or if the methods, facilities or controls used for its manufacture, packing, storage or installation are not in conformity with federal requirements. See 21 U.S.C. §351.

5.      Pursuant to federal law, a device is deemed to be misbranded if, among other things, its labeling is false or misleading in any particular manner, or if it is dangerous to health when used in the manner prescribed,  recommended  or suggested in the labeling thereof. See 21U.S.C. §352.

6.      Pursuant to federal law, manufacturers are required to comply with FDA regulation of medical devices, including FDA requirements for records and reports, in order to prohibit introduction of medical devices that are adulterated or misbranded, and to assure the safety and effectiveness of medical devices. In particular, manufacturers must keep records and make reports if any medical device that may have caused or contributed to  death  or  serious injury, or if the device has malfunctioned in a manner likely to cause or contribute to death or serious injury. Federal law also mandates that the FDA establish regulations requiring a manufacturer of a medical device to report promptly to FDA any correction or removal of a device undertaken to reduce a risk to health posed by the device, or to remedy a violation of federal law by which a device may present a risk to health. See 21 U.S.C. §360(i).

7.      Pursuant to FDA regulation, adverse events associated with a medical device must be reported to FDA within 30 days after the manufacturer becomes aware that a device may have caused or contributed to death or serious injury, or that a device has malfunctioned and would be likely to cause or contribute to death or serious injury if the malfunction was to recur. Such reports must contain all information reasonably known to the manufacturer, including any information that can be obtained by analysis, testing, or other evaluation of the device, and any information in the manufacturer's possession. In addition, manufacturers are responsible for conducting an investigation of each adverse event, and must evaluate the cause of the adverse

8

event. See 21 CFR §803.50.

8.      Pursuant to federal regulation, manufacturers of medical devices must also describe in every individual adverse event report whether remedial action was taken in regard to the adverse event, and whether the remedial action was reported to FDA as a removal  or correction of the device. See 21 CFR §803.52.

9.      Pursuant to federal regulation, manufacturers must report to FDA in five (5) business days after becoming aware of any reportable MDR event or events, including a trend analysis that necessitates remedial action to prevent an unreasonable risk of substantial harm to the public health. See 21 CFR §803.53.

10.      Pursuant to federal regulation, device manufacturers must report promptly to FDA any device corrections and removals, and maintain records of device corrections and removals. FDA regulations require submission of a written report within ten (10) working days of any correction or removal of a device initiated by the manufacturer to reduce a risk to health posed by the device, or to remedy a violation of the Act caused by the device, which may present a risk to health. The written submission must contain, among other things, a description of the event giving rise to the information reported and the corrective or removal actions taken, and any illness or injuries that have occurred with use of the device, including reference to any device report numbers. Manufacturers must also indicate the total number of devices manufactured or distributed which are subject to the correction or removal, and provide a copy of all communications regarding the correction or removal. See 21 CFR §806.

11.      Pursuant to federal regulation, manufacturers must comply with specific quality system requirements promulgated by FDA. These regulations require manufacturers to meet

design control requirements, including but not limited to, conducting design validation to ensure that devices conform to defined user needs and intended uses.  Manufacturers must also meet quality standards in manufacture and production.  Manufacturers must establish and maintain procedures for implementing corrective actions and preventive actions, and investigate the cause of nonconforming products and take corrective action to prevent recurrence. Manufacturers are also required to review and evaluate all complaints and determine whether an investigation is necessary. Manufacturers are also required to use statistical techniques where necessary to evaluate product performance.  See 21 CFR §820.

12.     Pursuant to federal regulation, a manufacturer must report to the FDA any new indications for use of a device, labeling changes, or changes in the performance or design specifications, circuits, components, ingredients, principle of operation or physical layout of the device. Federal regulations require that: "[a] PMA supplement must be submitted when unanticipated adverse effects, increases in the incidence of anticipated adverse effects, or device failures, necessitate a labeling, manufacturing, or device modification."

13.     Specifically, it is believed upon information and belief that discovery will reveal that with respect to the Covidien Surgical Stapling Device(s) at issue herein, Defendant has failed to timely report adverse events, failed to timely conduct failure investigations and analysis, failed to timely report any and all information concerning product failures and corrections, failed to timely and fully inform FDA of unanticipated adverse effects, increases in the incidence of adverse effects, or device failures  necessitating a  labeling, manufacturing  or device modification, failed to conduct necessary design validation, and sold a misbranded and adulterated product.

10

### III

### CAUSES OF ACTION
### COUNT ONE
### LOUISIANA PRODUCT LIABILITY ACT- DEFECTIVE MANUFACTURE

1.    Plaintiff adopts and incorporates by reference all the foregoing language of this Complaint as if fully set forth herein and further states as follows.

2.    At all times material hereto, the Defendant was the manufacturer, designer, distributor, seller, and/or supplier of the Covidien Surgical Stapling Device(s) utilized in Plaintiff Amy McKinney's initial gastric surgery.

3.    The Covidien Surgical Stapling Devices manufactured, sold, distributed, supplied, and/or placed in the stream of commerce by the Defendant were defective in their composition, manufacture, and construction when they left the care, custody, control and hands of the Defendant in that they deviated from product specifications and/or applicable federal requirements for these medical devices, including but not limited to, the FDA approved manufacturing specifications and the FDA's Good Manufacturing Practices,  and posed a serious risk of injury and/or death.

Defendants acts and omissions constitute an adulteration, misbranding, or both, as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C §§ 331(a) and 333(a)(2), and constitute a breach of duty, subjecting Defendant to civil liability for all damages arising therefrom.

4.    Defendant knew or reasonably should have known that the Covidien Surgical Stapling Device(s), as manufactured or constructed, was/were defective and not reasonably safe for its/their intended uses and posed an unreasonable risk of harm to individuals, including

Plaintiff Amy McKinney, whose surgeon used the Covidien Surgical Stapling Device(s) as intended by Defendant.

5.    As a direct and proximate result of the defective manufacture, composition, or construction of the Defendants Covidien Surgical Stapling Device(s), and Plaintiff's use of the defective Covidien Surgical Stapling Device(s) as designed, manufactured, sold, supplied, and introduced into the stream of commerce by Defendant, and/or the Defendant's failure to comply with federal requirements, Plaintiffs suffered serious physical injury, harm, and legally cognizable damages as set forth hereinabove and/or hereinbelow and economic loss and will continue to suffer such harm, damages and economic loss in the future.

## IV

### COUNT TWO
### LOUISIANA PRODUCTS LIABILITY ACT-DESIGN DEFECT

1.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

2.    Defendant is the designer, manufacturer, and /or seller of the Covidien Surgical Stapling Device(s) at issue herein. As designer, manufacturer, and/or seller of such medical devices, Defendant had a duty to design, manufacture, and sell devices that would not cause harm to foreseeable users, including Plaintiffs herein.

3.    Defendant had a further duty to provide instructions concerning the proper use of the Covidien Surgical Stapling Device(s) at issue herein, as well as warnings of the risks and dangers associated with using the device(s), and including but not limited to, the adverse symptomology suffered by Plaintiff Amy McKinney following her initial gastric surgery.

4.      Defendant acted negligently in failing to use reasonable care in designing, manufacturing, marketing, labeling, packaging, and selling the Covidien Surgical Stapling Device(s) at issue herein.

5.      Defendant breached its duty of care to the Plaintiffs in the manufacture, design, labeling, warnings, instructions, sale, marketing, distribution, and recruitment and training of physicians to use  the Covidien Surgical Stapling Device(s) at issue herein.

6.      Defendant's acts and omissions constitute an adulteration, misbranding, or both, as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C §§ 331(a) and 333(a)(2), and constitute a breach of duty, subjecting Defendant to civil liability for all damages arising therefrom.

7.      The Covidien Surgical Stapling Device(s) at issue herein as manufactured and supplied by Defendant were defective in design and formulation in that, when they left the hands of the Defendant, the foreseeable risks of the product exceeded the benefits associated with its/their design or formulation, and/or it was more dangerous than an ordinary customer would expect, and/or Defendant failed to comply with federal requirements for these medical devices. At the time the Defective Device(s) left the possession of Defendant, the risk of the Defective Product(s) clearly outweighed the utility of the product(s) or its/their therapeutic benefits.

8.      At all times pertinent and material hereto, there existed alternative, feasible designs to provide comparable benefits of the Covidien Surgical Stapling Device(s) at issue herein without the attendant risks of complications and serious adverse symptomology and effects.  These alternative, feasible methods and products, upon information and belief, were capable of preventing Plaintiff's adverse symptomology and legally cognizable damages and

13

injuries.

9.     The foreseeable risks associated with the design or formulation of the Covidien Surgical Stapling Device(s) includes, but is not limited to, the fact that the design or formulation of the Covidien Surgical Stapling Device(s) is more dangerous than a reasonably prudent consumer would expect when used in its/their intended manner and/or it/they failed to comply with federal requirements.

10.     As a direct and proximate result of the defective design of the Defendant Covidien's Surgical Stapling Device(s) and Plaintiff's use of the defective Covidien Surgical Stapling Device(s) as designed, manufactured, sold, supplied, and introduced into the stream of commerce by Defendant and/or the Defendant's failure to comply with federal requirements, Plaintiffs Amy & Kyle McKinney suffered serious physical injury, harm, damages and/or economic loss and will continue to suffer such harm, damages and economic loss in the future.

**V**

**COUNT THREE**
**LOUISIANA PRODUCT LIABILITY ACT- FAILURE TO WARN**

1.     Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

2.     At all times material hereto, the Defendant was the manufacturer, designer, distributor, seller, and/or supplier of the Covidien Surgical Stapling Device(s) at issue herein and sold the Covidien Surgical Stapling Device(s) to patients knowing they would then be utilized in patients in need of the closure of surgical incisions and/or wounds following surgery.

3.     The Covidien Surgical Stapling Device(s) was/were expected to, and did, reach

14

the Plaintiff Amy McKinney without substantial change or adjustment in its/their condition as designed, manufactured, and sold by the Defendant.

4.     The Covidien Surgical Stapling Device(s) as designed, developed, tested, manufactured, marketed, sold, and/or placed in the stream of commerce by Defendant was/were in a unreasonably dangerous and defective condition when it/they left the hands of the Defendant and posed a threat to any user of the device(s) when put to its/their intended and reasonably anticipated use.

5.     Plaintiff Amy McKinney was and is in the class of persons that Defendant actually considered, or should have considered, to be subject to the harm caused by the defective nature of the Covidien Surgical Stapling Device(s) at issue herein.

6.     The Covidien Surgical Stapling Device(s) was/were used in the manner for which it/they was/were intended.  Plaintiff's use of the Covidien Surgical Stapling Device(s) as intended by Defendant resulted in severe physical and emotional and other harm and injuries to the Plaintiffs.

7.     Defendant knew or should have known that the Covidien Surgical Stapling Device(s) as designed, developed, tested, manufactured, marketed, sold, and/or placed in the stream of commerce by Defendant was/were in a dangerous and defective condition when it/they left the hands of the Defendant and posed a threat to any user of the device.

8.     Defendant's acts and omissions constitute an adulteration, misbranding, or both, as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C §§ 331(a) and 333(a)(2), and constitute a breach of duty, subjecting Defendant to civil liability for all damages arising therefrom.

15

9.      Defendant failed to provide adequate and timely warnings or instructions regarding the Covidien Surgical Stapling Device(s) at issue herein and its/their known defects, including but not limiting to the propensity for failure to close surgical incisions properly, thus resulting in leakage such as that experienced by Plaintiff Amy McKinney.  The Defendant failed to properly and adequately warn and instruct the Plaintiff and her health-care providers with regard to inadequate research and testing of the Covidien Surgical Stapling Device(s).

10.     In addition, and in the alternative, Defendant acquired knowledge of a characteristic of the Covidien Surgical Stapling Device(s) at issue herein that may cause damage and the danger of such characteristic, or the Defendants would have acquired such knowledge had the Defendants acted as a reasonably prudent manufacturer.   Accordingly, Defendants are liable for the damages caused by their subsequent failure to use reasonable care to provide an adequate warning regarding such characteristics and its/their dangers to users and handlers of medical devices.

11.     In that regard, upon information and belief, discovery will reveal that Defendant failed to comply with the FDA's Medical Device Reporting regulations requiring a manufacturer to report all incidents in which the device(s) may have caused or contributed to death or serious injury, or malfunctioned in such a way that would likely cause or contributed to death or serious injury if the malfunction recurred.  21 U.S.C. §360i(a)(1); 21 C.F.R. § 803.50(a).

12.     As a direct and proximate result of the Defendant's failure to warn Plaintiffs of the dangerous condition of the Covidien Surgical Stapling Device(s) and Plaintiff's use  of the defective Covidien Surgical Stapling Device(s) as designed, manufactured, sold, supplied, and introduced into the stream of commerce by Defendant and/or the Defendant's failure to comply

16

with federal requirements, Plaintiffs suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**VI**

**COUNT FOUR**
**LOUISIANA PRODUCT LIABILITY ACT - BREACH OF EXPRESS WARRANTY**
**(La. Rev. Stat. 9:2800.54, 9:2800.58, et seq.)**

1.      Plaintiffs adopt and incorporate by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows.

2.      Defendant expressly warranted that the Covidien Surgical Stapling Device(s) at issue herein was/were a safe and effective means of properly closing surgical incisions and/or wounds.

3.      The Covidien Surgical Stapling Device(s) manufactured and sold by Defendant did not conform to these express representations because they caused serious injury to Plaintiff Amy McKinney when used as suggested, recommended and directed.

4.      Through its use of aggressive marketing campaigns directed at health care providers and direct to patient advertising at medical conferences, hospitals, private offices, the provision of valuable cash and non-cash benefits to health care providers, brochures, and websites, offering exaggerated and misleading expectations as to the safety and utility of the Defendant's Covidien Surgical Stapling Device(s) at issue herein , Defendants expressly or impliedly warranted that it/they was/were safe and fit for the purposes of treating patients with surgical incisions and/or wounds when used under ordinary circumstances and in an ordinary manner.

5.      Defendant knew or should have known that the Covidien Surgical Stapling

17

Device(s) was/were not of merchantable quality when sold and then utilized in patients. Specifically, Defendants should have known that the Covidien Surgical Stapling Device(s) was/were not fit for properly closing surgical incisions and/or wounds.

6.     Because of its/their propensity to cause harm and lack of warnings regarding its/their rate of adverse events, the Covidien Surgical Stapling Device(s)  was/were not of merchantable quality or suited for its/their intended use as warranted, and, as such, Defendant is liable to the Plaintiffs herein as alleged.  Plaintiffs' injuries and damages are a direct and proximate result of Defendant's negligence and disregard for the Plaintiffs' safety. Defendant made assurances to the general public, hospitals, and health care professionals that the Covidien Surgical Stapling Device(s)  was/were safe and reasonably fit for its/their intended purpose.

7.     Plaintiff Amy McKiney and/or her healthcare providers, and including but not necessarily limited to her surgeon, Dr. Ordoyne, chose the Covidien Surgical Stapling Device(s) based upon Defendant's warranties and representations regarding the safety and fitness of the device(s).

8.     Plaintiff, individually and/or by and through her physicians, reasonably relied upon Defendant's express warranties and guarantees that the Covidien Surgical Stapling Device(s)  was/were safe, merchantable, and reasonably fit for its/their intended purpose.

9.     Defendant breached these express warranties because the Covidien Surgical Stapling Device(s) utilized was/were unreasonably dangerous and defective and not as Defendants had represented.

10.     Defendant's breaches of its express warranties resulted in the utilization of unreasonably dangerous and defective product(s) in Plaintiff Amy McKinney's body, placing

18

Plaintiff Amy McKinney's health and safety in jeopardy, and causing legally cognizable harm to Plaintiffs.

      11.    As a direct and proximate result of Defendant's breach of warranty, Plaintiffs have suffered legally cognizable harm and serious physical injury, harm, damages and/or economic loss and will continue to suffer such harm, damages and economic loss in the future, including obligations for medical services and expenses, and other damages.

## VII
## DAMAGES
## LOSS OF CONSORTIUM, SERVICES & SOCIETY

      1.    Plaintiffs incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

      2.    At all times pertinent hereto, complainant, Harley Kyle McKinney, was and is currently the lawful husband of Amy McKinney and is therefore entitled to recover damages for loss of consortium, services and society for his damages as a result of the injuries sustained by his wife.

      3.    As a direct and proximate result of the above-described legally cognizable harm and  injuries sustained by Plaintiff Amy McKinney, her spouse Kyle McKinney has in fact suffered a loss of love, spousal consortium, companionship, society, affection, services and support.

      4.    Further, and as a direct result of the extreme adverse consequences, including but not limited to, extreme anguish, stress, pain, discomfort and resulting irritability of Plaintiff Amy McKinney throughout her ordeal in suffering and continuing to suffer  from the adverse symptomology caused by the utilization of Defendant's surgical stapling devices(s) and/or

product(s) at issue herein, the Plaintiffs are now compelled to contemplate divorce and it is anticipated that the Plaintiffs will in fact file for divorce in the immediate future, thus ending their matrimonial regime and all to their detriment.

## VIII

## GENERAL & SPECIAL DAMAGES

As the proximate result of the aforementioned acts and/or omissions of Defendant, Plaintiffs have sustained, or are certain to sustain, the following general and special damages:

A. Past and future loss of earnings;

B. Past and future medical expenses;

C. Nursing and rehabilitative care expenses;

D. Loss of earning capacity;

E. Past and future pain and suffering;

F. Past and future mental anguish;

G. Permanent disability;

H. Loss of enjoyment of life.

I. Loss of Consortium, services and society as set forth above (Kyle McKinney)

## IX

## CLASS ACTION ALLEGATIONS

This action is appropriate for determination through the federal Class Action Procedural device for the following reasons:

1. The large number of potential claimants present a level of numerosity better handled through the class action procedure as opposed to a mass joinder of individual claims;

2.    The common issues of law and fact pertaining to the determination of fault and the liability for compensatory and exemplary damages predominate over the individual issues of quantum, and such issues are typical of similar claims;

3.    The determination of fault and the basis for assessment of compensatory aamages may be made in the class action without the necessity of proof at the time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary;

4.    Plaintiffs herein have sustained damages of the nature described hereinabove and are suitable representatives of the class and hereby seek to be confirmed as class representatives;

5.    The Plaintiffs herein are represented by skilled attorneys who are experienced in handling mass torts and class actions, and who can be expected to handle this matter in an expeditious and economical matter in the best interests of the proposed class membership. Plaintiffs' Counsel Val P. Exnicios is the current Chair of the Louisiana State Bar Association's Class Action, Mass Tort & Complex Litigation Section and has previously been appointed by the Judges of this Honorable USDC-EDLA and other state and federal courts to serve as a member of Plaintiff Steering Committees in class action matters.

6.    The class action procedure is the superior vehicle for the efficient disposition of the issues and claims herein presented.

## X.

Further, Plaintiffs and all those similarly situated are entitled to have this cause maintained as a class action for the following additional reasons:

1.    Requiring the institution of separate lawsuits would pose a serious risk of

inconsistent adjudications and earlier separate determinations with a prejudicial effect on subsequent litigants.

2.      Prosecution of separate actions would pose a serious threat of substantially impeding the ability of class members to protect their interests.

3.      Any resistance of liability by the defendants would be applicable to all claims presented by all members of the class.

4.      There are common issues of law and fact that predominate over those issues that might pertain to individual cases.

5.      The class action is a superior procedural vehicle for the fair and efficient adjudication of this controversy, to wit:

a.      The vast majority of the class members have no interest in controlling the litigation;

b.      Such a method of proceeding would allow the Court to process all rightful claims in one proceeding;

c.      It is desirable to concentrate all the litigation in one forum; and

d.      Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to class members and permit distribution of the recovery.

## XI.

## CLASS DEFINITION

Plaintiffs propose to proceed on behalf of the following class of individuals:

*All persons in the State of Louisiana who have suffered damage  as a result of the*

22

*utilization of Defendant Covidien, Inc.'s surgical stapler device(s) and/or system(s) at issue herein, except Defendant's employees and members of the federal judiciary and federal court staff who are hereby expressly excluded.*

**WHEREFORE**, Plaintiffs, AMY MCKINNEY and HARLEY KYLE MCKINNEY, pray:

A.    That defendant, Covidien, be duly cited to appear and answer this Amended Class Action Complaint ;

B.    That after due proceedings are had, that this action be certified as a class action, as alleged above, for the purpose of determining the common issues of liability and causation;

C.    That upon certification of the class action, the Court call for the formulation of a suitable case management plan;

D.    That after due proceedings had, there be judgment herein in favor of Plaintiffs and against Defendant, for all damages which are reasonable in the premises in excess of $ 75,000.00, exclusive of interest and costs, which will fully compensate Plaintiffs herein, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings.

E.    That the rights of Plaintiffs and the members of the class to establish their entitlement to compensatory damages, and the amounts thereof, be reserved for determination in their individual actions as appropriate.

F.    That Plaintiffs recover their costs for the prosecution of this class action and be awarded such sum as is reasonable for their service as class representatives.

G.    That a medical monitoring class be certified, and the Court award appropriate

damages sufficient to establish a medical monitoring program as deemed effective by Plaintiffs' medical experts.

H.    That the Court render judgment in favor of Plaintiffs' class awarding all damages as prayed for herein, including attorneys' fees, with all costs assessed against Defendant.

I.    For such further and other relief as this Honorable Court deems just and equitable.

Respectfully submitted:

/s/ Val Patrick Exnicios
**VAL PATRICK EXNICIOS, T.A.  (LA Bar #19563)**
Carlos A. Ramirez (LA #31532)
*Liska, Exnicios & Nungesser*
Attorneys & Counselors-at-Law
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
(504) 410-9611
Fax: (504) 410-9937
Vpexnicios@exnicioslaw.com
Cramirez@exnicioslaw.com

**PLEASE SERVE:**

**COVIDIEN**
Through the Louisiana Long-Arm Statute
15 Hampshire Street
Mansfield, MA 02048